# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BERNARD GULLY, | |
| Plaintiff, | Case No. 15-CV-6561 |
| v. | |
| BARBARA MILLER, | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bernard Gully was previously incarcerated at the Will County Adult Detention Facility ("WCADF"). Plaintiff's sole remaining claim here is that Defendant Barbara Miller, a nurse at the WCADF, was deliberately indifferent to his medical needs at multiple points during his confinement. Defendant Miller has now moved for summary judgment [57], and for the reasons stated below, her motion is granted.

I.   **Background**[1]

Plaintiff was incarcerated at the WCADF from November 19, 2013 until January 12, 2016.  [58] at 1.  From the outset of his confinement, he was diagnosed with gastroesophageal reflux disease ("GERD").  *Id*.  For the vast majority of his term at the WCADF, Plaintiff received the drug Protonix to treat his GERD.  *Id*. at 2.

Defendant Miller, a registered nurse, served as the Health Service Administrator for Correct Care Solutions ("CCS") from approximately July 2012 through July 7, 2015.  *Id*.  CCS contracted with Will County to provide medical services to inmates at the WCADF.  *Id*.  Defendant Miller did not, and could not, prescribe medication or cancel prescription medication.  *Id*. at 3.  Her only interactions with Plaintiff were her written responses to his grievances.  *Id*.

At the WCADF, CCS used a "formulary," or a list of approved medications that can be prescribed to inmates.  *Id*.  To secure a prescription (or a renewal) for a drug not on the formulary, a patient must obtain a non-formulary exception after a physical examination by a doctor.  *Id*.  An examination and approval for a non-

---

[1] Plaintiff, though represented by counsel [52], has not filed a separate statement of additional facts or a response to Defendant's statement of facts, as set forth by Local Rule 56.1.  Accordingly, Defendant's Local Rule 56.1 statements are deemed admitted, and those same statements [58] form the basis of this section.  *See* L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party undisputed.").  The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015).

formulary exception may take several days, and it may take several more days still before the medication is actually available. *Id.* at 4.

**A.     April 2014**

On or about April 8, 2014, CCS removed Protonix from the formulary. *Id.* at 4-5. As a result, the jail's pharmacy could no longer provide Plaintiff with Protonix, absent a non-formulary exception. *Id.* at 5.

Around that same time, Dr. Wesley Harmston, the medical director at the WCADF, reviewed Plaintiff's medical records, prescribed Plaintiff Tums for his GERD, and ordered the nurses to schedule an examination of Plaintiff to determine whether a non-formulary exception was necessary. *Id.*

On April 10, 2014, Plaintiff filed two grievances related to his treatment for GERD and the fact that he was no longer receiving Protonix. [59-3] at 3-4. Defendant Miller responded to these grievances, in part, by noting that "it is the MD that orders medicine" and "Protonix is not formulary but can be ordered and OK'd by the MD in charge." *Id.* Dr. Harmston was then advised that Plaintiff was complaining that the Tums were ineffective, so he ordered Pepcid for Plaintiff instead. [58] at 5.

On April 11, 2014, Dr. Harmston examined Plaintiff, and secured a non-formulary exception for Plaintiff to receive Protonix. *Id.* at 6. Both that same day and again on April 13, Plaintiff filed additional grievances regarding his GERD treatment. *Id.* at 5-6. Defendant Miller, in response, explained that an "alternative [medicine] has been ordered for you." *Id.* at 6.

3

On April 15, 2014, Plaintiff appealed the denial of his April 10 grievance, suggesting that the dismissal was "condescending and dismissive." *Id.* at 7. Plaintiff's appeal was denied, as the "doctor has sole" control over "what treatment he deems appropriate." *Id.* at 8.

Plaintiff actually began receiving Protonix again on April 17, 2014. [58] at 6. At that time, Protonix had only been removed from the formulary for nine days, Plaintiff had only received the non-formulary exception six days ago, and Plaintiff had been offered both Tums and Pepcid to treat his GERD during the intervening period. *See supra* at 2-3.

**B.     July 2014**

On June 30, 2014, the regional director for CCS examined Plaintiff, and ordered that Plaintiff begin a "PrevPac" treatment (which includes Protonix with select other drugs) for fourteen days. *Id.* The PrevPac treatment is designed to "resolve GERD symptoms after eradicating H. pylori bacteria." *Id.* On July 17, 2014, the PrevPac treatment ended, and Plaintiff stopped receiving Protonix. *Id.* On July 20, 2014, Dr. Harmston ordered Tums for Plaintiff until his next examination. *Id.* at 7.

On July 21, 2014, Plaintiff once again filed a grievance regarding his transition to Tums. [59-3] at 9. Defendant responded to this grievance by noting that the "MD orders the medication and it would be appropriate to ask him" about the treatment plan. *Id.*

On July 25, 2014, Plaintiff filed another grievance, suggesting he needed additional medication. *Id.* at 11. Defendant's response is only partially legible, but she appears to note that "the MD must reorder" the "medication." *Id.*

On July 28, 2014, Dr. Harmston once again examined Plaintiff and requested a non-formulary exception for Protonix. [58] at 7. Plaintiff began receiving Protonix again on August 1, 2014, twelve days after his last dose. *Id.*

## C. March 2015

On March 23, 2015, Plaintiff's Protonix prescription once again expired, so the nurses at WCADF offered him Tums. *Id.*

On March 25, 2015, Plaintiff filed another grievance, claiming that for the "3rd time, the medical staff has failed to provide [his] prescribed medicine." [59-3] at 13. By this time, Defendant Miller was no longer the Health Service Administrator, so the response to this grievance was written by someone else. *See supra* at 2. The response itself notes that Plaintiff "is on the list for the doctor." [59-3] at 13. On March 27, 2015, Plaintiff filed another grievance regarding his GERD treatment. *Id.* at 14. The response here notes that this issue "has been addressed," and Plaintiff is "getting [his] prescribed medication." *Id.*

On March 31, 2015, Dr. Harmston again examined Plaintiff and requested a non-formulary exception for Protonix. [58] at 7. Plaintiff nevertheless complained about not receiving his Protonix that same day. [59-3] at 15. The grievance response reads: "You were seen by the doctor today, 3/31/15, who prescribed you your medication." *Id.*

5

Plaintiff resumed receiving Protonix on April 1, 2015, nine days after his last dose. [58] at 8. *Id.* Plaintiff continued to receive Protonix until he was transferred to the IDOC on January 12, 2016. *Id.*

## II.     Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## III.    Analysis

### A.     The Deliberate Indifference Standard

Plaintiff's sole remaining claim is premised upon 28 U.S.C. § 1983 and the Eighth Amendment, which entitles prisoners to "adequate medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is

6

entitled to reasonable measures to meet a substantial risk of serious harm to her."). To prevail on his claim against Defendant Miller, Plaintiff must show that Defendant "display[ed] deliberate indifference to a serious medical need." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010). Deliberate indifference is a two-pronged standard.

First, Plaintiff must demonstrate that his condition was "objectively serious." An objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (internal quotation marks omitted). A "medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* Defendant Miller does not contest that Plaintiff's GERD was an "objectively serious" condition, with good reason. *See Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) ("GERD can . . . produce persistent, agonizing pain and discomfort. It can also produce serious complications.").

Next Plaintiff must demonstrate that Defendant Miller acted with the requisite state of mind. This prong has multiple components. Defendant Miller must have subjective knowledge of the risk to the inmate's health, and she also must disregard that risk. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) ("[T]he subjective prong of the deliberate indifference claim . . . requires that the official must have actual, and not merely constructive, knowledge of the risk in

7

order to be held liable."). Plaintiff "need not present direct evidence of the official's state of mind: Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Gevas*, 798 F.3d at 480 (internal quotation marks omitted).

The fact that a prisoner has received some medical treatment does not necessarily defeat his claim, because deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment "likely to seriously aggravate his condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (internal quotation marks omitted). That said, isolated incidents of delay, medical malpractice, and mere disagreement with a doctor's medical judgment do not rise to the level of deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Finally, "because § 1983 creates a cause of action based on personal liability and predicated on fault," Plaintiff "must establish that the defendant personally caused or participated in the alleged constitutional deprivation." *Brown v. Godinz*, No. 15 C 522, 2017 WL 2868951, at *5 (N.D. Ill. July 5, 2017). Where "the official has no control over the condition complained about—such as a warden reviewing a grievance about a medical condition for which the inmate is already under a doctor's care, or a governor receiving a letter from an inmate about adverse prison conditions—the official's review of a grievance or complaint letter, by itself, does not

8

support the type of involvement needed for § 1983 liability." *Hardy v. Godinez*, No. 12 C 6033, 2017 WL 2569605, at *7 (N.D. Ill. June12, 2017).

B.   **Plaintiff's Claim Fails Based Upon The Undisputed Record**

Defendant Miller makes multiple arguments in support of her motion for summary judgment, but the Court need only address one; namely, her contention that her actions did not, as a matter of law, rise to the level of deliberate indifference. The Court agrees.

Plaintiff's claim concerns the administration of a prescription drug, which Defendant Miller, as a nurse, was incapable of prescribing. *See generally* [9]. The undisputed record further reflects that when Defendant Miller did receive grievances regarding Plaintiff's Protonix prescription, she expeditiously referred his request to the physician overseeing Plaintiff's care, who *was* empowered to prescribe any necessary medication. *See supra* at 2-5. Moreover, in both April and July of 2014, the decision to take Plaintiff off Protonix was made by individuals other than Defendant Miller, as part of a more comprehensive treatment plan that included the PrevPac, Tums and Pepcid. *Id.* Finally, Defendant Miller's putative connection to Plaintiff's complaints in March of 2015 is even more tenuous, as she was no longer serving as the Health Service Administrator by that time, and there is nothing in the record to suggest she was even aware of those complaints. *Id.*

In short, no reasonable jury could determine that Defendant Miller's actions rose to the level of deliberate indifference on this *undisputed* record. In fact, multiple decisions in this circuit reflect that a nurse who reasonably processes a

9

patient's request for prescription drugs does not, absent additional evidence, act with deliberate indifference. *See Williams v. Guzman*, 346 F. App'x 102, 106 (7th Cir. 2009) ("Williams next argues that Nurse Pava and Nurse Fanta were deliberately indifferent by not checking whether doctors had ordered Amitriptyline and by disregarding the delays in his receiving Amitriptyline and seeing an ophthalmologist. But there is no evidence that the nurses acted with any culpable state of mind because they played no part in the doctors' treatment decisions, and nothing in the record suggests that they had authority to refer inmates to outside specialists."); *Haskins v. Sumulong*, No. 13 CV 8392, 2017 WL 1178223, at *8 (N.D. Ill. Mar. 30, 2017) ("[Plaintiff] does not claim that the nurses were responsible for failing to manage any pain he experienced after he began to see Dr. Sood following his injury. Even if [plaintiff] were making such a claim, however, a jury could not pin any such ongoing pain on the nurses. The doctor had prescribed a seven-day course of pain medication that the nurses were unable to prescribe; when notified of [plaintiff's] complaint of renewed pain after that prescription expired, on February 10, 2012, Nurse Peach, promptly referred Haskins to the jail doctor, who renewed the prescription and set a further follow-up appointment."); *Jacobo v. Will Cty. Sheriff's Office*, No. 09 C 3392, 2011 WL 4553030, at *8 (N.D. Ill. Sept. 29, 2011) ("[Plaintiff] believes that [defendant nurse] should have done more for him during this period, such as providing . . . medicine for his pain, or stitches for his wound. But as [defendant nurse] explained, and [plaintiff] did not refute, as a Registered Nurse [defendant nurse] is unable to prescribe medicine or apply stitches," such

that her actions were "within the traditional standard of care and far short of the egregious actions required for deliberate indifference").

### C. *Burton* and *Miller*

The Seventh Circuit's decisions in *Burton v. Downey*, 805 F.3d 776 (7th Cir. 2015), and *Miller v. Campanella*, 794 F.3d 878 (7th Cir. 2015), provide an illustrative contrast here.

*Burton* concerned a pretrial detainee who alleged that various jail personnel and nurses had exhibited deliberate indifference to his serious medical needs. 805 F.3d at 780. The district court denied defendants' motion for summary judgment, reasoning, *inter alia*, that a reasonable jury could find that defendants violated plaintiff's constitutional rights by "stopping his prescribed medication, including his pain medication, for over a week while he was detained." *Id.* at 784. Plaintiff further contended that "because the medical staff ignored his requests for narcotic pain medication and refused to contact his primary care physician who had previously prescribed Norco, he suffered extreme post-surgical pain and withdrawal symptoms." *Id.* at 785. The Seventh Circuit reversed and remanded, agreeing "with defendants that no reasonable jury could conclude that the failure to prescribe narcotic pain medication or contact a doctor who would prescribe it amounted to deliberate indifference." *Id.* While plaintiff may have "preferred Vicodin to Ultram, or to have seen a doctor who would have prescribed narcotics," the Constitution does not grant detainees or prisoners "unqualified access to healthcare." *Id.* (internal quotation omitted).

11

*Miller*, meanwhile, was initiated by an Illinois state inmate alleging that various medical and administrative personnel at the Lawrence Correctional Center had ignored his GERD symptoms and unreasonably delayed renewing his prescription medication. 794 F.3d at 879. The district court determined that plaintiff had been denied any medical treatment for his GERD for a period of one month, which was insufficient to state a claim for deliberate indifference, but the Seventh Circuit reversed, finding that there was a disputed question of fact as to whether the delay was actually for one month or two. *Id.* The court further explained that leaving "a serious case of GERD untreated for two months is a dereliction of medical duty." *Id.* at 880.

The present case is more analogous to *Burton* than *Miller*. Here, as in *Burton*, Plaintiff continually received medical treatment, in the form of Protonix, the PrevPac, Tums or Pepcid. *See supra* at 2-4. While Plaintiff would seemingly have "preferred [Protonix] to [Tums or Pepcid], or to have [immediately] seen a doctor who would have prescribed" Protonix, that is not what the Constitution requires. *Burton*, 805 F.3d at 785; *see also Kaszuba v. Ghosh*, 580 F. App'x 486, 488 (7th Cir. 2014) (affirming grant of summary judgment on deliberate indifference claim when record "shows at most a disagreement over the choice of treatment, not its constitutional inadequacy"); *Mathis v. Carter*, No. 13 C 8024, 2017 WL 56631, at *3 (N.D. Ill. Jan. 5, 2017) ("isolated incidents of delay, medical malpractice, or a mere disagreement with a doctor's medical judgment does not rise to the level of deliberate indifference"). And in any event, *Defendant Miller* was not empowered to

make these treatment decisions regarding prescription drugs. She appropriately processed Plaintiff's grievances, and there is no basis in the record to conclude that she behaved with the requisite deliberate indifference.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [57] is granted. The Clerk is directed to enter Rule 58 judgment in favor of Defendant and against Plaintiff. Civil case terminated.

Date: August 1, 2017　　　　　　　　　　Entered:

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　John Robert Blakey
　　　　　　　　　　　　　　　　　　　United States District Judge